**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 17-cv-02042-MSK-NYW

**LINDA MURWAY**

     **Plaintiff,**

**v.**

**ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,**

     **Defendant.**

---

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to Ms. Murway's Motion for Summary Judgment **(# 50)**, the Defendant's ("Allstate") response **(# 59)**, and Mr. Murway's reply **(# 62)**; and Allstate's Motion for Summary Judgment **(# 53)**, Ms. Murway's response **(#58)**, and Allstate's reply **(# 63)**.  Also pending is Ms. Murway's Motion to Dismiss **(# 51)** her existing claim for common law bad faith breach, which is granted.

## <u>FACTS</u>

Mindful of the undisputed facts and the need to construe disputed facts most favorably to the non-movant, the Court summarizes the pertinent facts here but elaborates as necessary in its analysis.

In May 2013, Ms. Murway's auto was rear-ended by an uninsured driver causing Ms. Murway to suffer significant injuries.  Ms. Murway promptly made a claim with Allstate, her own insurer, invoking the uninsured motorist coverage in the policy.  The parties then began

1

negotiations over the value of Ms. Murway's claim. In April 2014, Ms. Murway made a demand on Allstate for approximately $133,000; Allstate responded with an offer of approximately $42,000. In November 2014, Ms. Murway lowered her demand to roughly $109,000; Allstate countered a few months later with an offer of $46,000.

In May 2016, with the two-year statute of limitation about to expire, Ms. Murway commenced suit against Allstate in the Colorado District Court for Denver County, alleging a single claim for breach of contract, but no claim for statutory or common-law bad faith breach of contract. In January 2017, Ms. Murway made a demand for the full policy limit of $250,000; Allstate responded with an Offer of Judgment in the amount of $58,000. With the parties far apart, the case proceeded to trial in April 2017. The jury returned a judgment in Ms. Murway's favor in the amount of $800,000, plus interest. (The court later reduced this sum to the policy limit of $250,000 and entered judgment in Ms. Murway's favor in that amount.)

Shortly after the jury's verdict, Ms. Murway filed a motion seeking to amend her complaint to add a claim for bad faith breach of contract. She explained that, at the time she commenced the action in May 2016, she was unaware of the full extent of her still-developing injuries and, further, "was unaware of any conduct by Allstate that would have allowed her in good faith to assert a common law or [statutory] bad faith claim." She stated that it was not until a November 2016 neurologist examination that the full extent of her injuries became clear, and that exam prompted her to make the January 2017 demand for the full policy limit. She states that Allstate's refusal of that demand and its conduct "through the jury trial . . . made it clear that it was not adjusting [her uninsured motorist] claim in good faith." She went on to explain that she was reluctant to file a new action to assert the bad faith claim due to "conflicting Colorado Court of Appeals decisions concerning the application of issue and claim preclusion." Ms.

Murway acknowledged that her "requested relief is admittedly novel," but explained that "no other solution is available under Colorado law to . . . avoid the risk of facing Allstate's defensive use of issue or claim preclusion." The state court denied her motion, finding "no credible legal or factual basis for the relief requested." It went on to state, "Plaintiff couches her motion as a 'Motion to Bifurcate' but it is really a request that this Court fix mistakes she perceives her attorney made in pleadings and/or settlement negotiations. This, the Court cannot, and will not, do."

Ms. Murway appealed the trial court's denial of her post-verdict motion to amend. On July 19, 2018, the Colorado Court of Appeals affirmed the trial court. It found that Ms. Murway's motion was properly denied as being a product of undue delay, in that she knew of her potential claim as early as "December 2016, months before trial," but waited to seek amendment until after trial because she was concerned about preserving her trial date.

In the interim, on August 2, 2017, Ms. Murway filed the instant action **(# 6)** in this court. Reciting the foregoing facts, she alleged that Allstate had engaged in a bad faith breach of contract by, among other things, "failing to have in place reasonable policies and procedures to determine the reasonable amount of her damages . . . until approximately three weeks before the scheduled trial date"; by "failing to engage in settlement discussions after receipt" of her January 18, 2017 demand; by "intentionally, as a litigation strategy, delaying its bad faith claims adjustment practices until well after the cut off date to amend pleadings had passed"; and by "using IME examiners it knew or should have known were biased based on past use and financial relationships" Ms. Murway's Complaint asserts two claims: (i) bad faith breach of insurance contract under Colorado law; and (ii) unreasonable delay in payment in violation of

C.R.S. 10-3-1115 and -1116. Ms. Murway has since withdrawn the bad faith claim, leaving only the statutory delay claim.

Both parties now move for summary judgment in their favor. Mr. Murway's motion **(#50)** argues that Allstate's bad faith and unreasonable delay is exemplified by its failure to update its calculation of medical expenses incurred between 2014 and January 2017, its failure to include future medical expenses in its final offer of judgment, and in its failure to consider medical records and opinions that Allstate specifically requested she obtain. Allstate's motion **(#53)** argues that: (i) Ms. Murway's bad faith claims are barred by the doctrine of claim preclusion because the nature and extent of Allstate's alleged bad faith was known to her at the time she commenced the first action in state court, yet she failed to assert the bad faith claim at that time; and (ii) her bad faith claim is barred by the 2-year statute of limitation because she was aware of Allstate's alleged bad faith refusal to settle as early as roughly May 2014, yet did not commence this suit until August 2017.

### ANALYSIS

**A. Standard of review**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of

proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

### B. Allstate's motion

Because Allstate's motion is dispositive, the Court begins with that motion.

The doctrine of claim preclusion[1] prevents parties from relitigating issues that were or could have been raised in a prior action. *Gale v. City and County of Denver*, 923 F.3d 1254, 1255 (10th Cir. 2019). This Court applies the claim preclusion rules of the state entering the prior judgment, Colorado. *Id.* Colorado law provides four elements that must be established: (i) the judgment in the prior proceeding is final; (ii) the prior and current proceeding involved identical subject matter; (iii) the prior and current proceeding involved identical claims for relief; and (iv) the parties to both proceedings were identical or in privity with one another. *Id.* at 1255-56. There is no meaningful dispute between the parties as to three of the four elements – Ms. Murway and Allstate were parties to both actions, the subject matter of both actions was the same auto accident and Allstate's adjustment of Ms. Murway's claim, and the first lawsuit resulted in a final judgment. Thus, the only question is whether the two suits involve "identical claims for relief."

---

[1]    Colorado courts have deprecated the more formal label of "*res judicata*" as being confusing and overbroad. *Foster v. Plock*, 394 P.3d 1119, 1123 (Colo. 2017).

The identity of claims element requires the Court to determine whether the claim at issue is the same that was brought – or, here, could have been brought – in the first proceeding. The Court resolves that question by looking to the "actual injury underlying the first proceeding." Claims are tied by the same injury when they concern all or part of the transaction, or series of connected transactions, out of which the first action arose. The Court examines whether "the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Foster v. Plock*, 394 P.3d 1119, 1127 (Colo. 2017). Claims arise out of the same transaction when they "seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis." *Id.*

### 1. Whether claim preclusion applies to claims accruing mid-litigation

Because this Court's subject-matter jurisdiction in this case arises from the parties' diversity of citizenship, this Court endeavors to apply the law of Colorado as dictated by the Colorado Supreme Court. *See Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1294 (10th Cir. 1996). If the Colorado Supreme Court has not addressed the legal issue in dispute, this Court's job is to "predict how that court would rule." *Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004). Decisions by a state's intermediate appellate court are not controlling on that question, but may serve as data points that help this Court and should be given considerable weight. *Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1202 n. 2 (10th Cir. 2002). Colorado's Supreme Court has not considered the question of whether a cause of action that ostensibly arises during the life of a prior lawsuit is barred by claim preclusion if not alleged and asserted in that prior suit. Thus, this Court turns to decisions from the Colorado Court of Appeals, as well as

"federal decisions and the general weight and trend of authority," to the extent it helps predict

how the Colorado Supreme Court would act. *Farmers Alliance*, 77 F.3d at 1294-95.

There is no ruling by the Colorado Supreme Court that governs. Thus, resolution of the

issue before the Court turns on two seemingly-contradictory cases from the Colorado Court of

Appeals. First, there is *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278 (Colo.App.

2006). Salazar was involved in an auto accident with an underinsured driver. Salazar made a

claim on her own policy's underinsured motorist ("UIM") coverage, and then commenced suit

against the other driver. Salazar's insurer joined in that lawsuit to clarify its own obligations

towards Salazar, and Salazar asserted a claim for breach of contract against her insurer.

Eventually, Salazar settled with the other driver for that driver's policy limits ($25,000), but

Salazar's insurer offered her only an additional $100 in settlement of her UIM claim. Salazar's

claim against her own insurer for benefits proceeded to trial, and a jury awarded her more than

$400,000 in damages; the trial court subsequently reduced that sum to the $25,000 policy limits.

A few months later, Salazar commenced a new suit against her insurer, alleging that its

evaluation of her claim constituted bad faith. The insurer argued that the newly-raised bad faith

claim was barred by the doctrine of claim preclusion, and the trial court agreed.

On appeal, the Colorado Court of Appeals walked carefully through the analysis of the

"identical claims" element of the claim preclusion analysis. It found that: (i) both the bad faith

claim and underlying breach of contract claim "derived from the same occurrence, State Farm's

refusal to compensate Salazar more than $100 under [the] policy"; (ii) "although the two claims

presented different legal theories, one sounding in contract and the other in tort, they sought

redress for essentially the same wrong," namely, "State Farm's allegedly unreasonable refusal to

pay the benefits" owed under the policy; (iii) both complaints rested on a similar factual analysis,

in that they both recited the circumstances of the accident, the particulars of the policy, and State

Farm's conduct in refusing to pay; (iv) that the breach of contract and bad faith claims "form[ed]

a convenient trial unit," given that the "bad faith claims would involve much of the same

evidence as the [ ] benefits claim," such as the circumstances of the accident and the nature of

Salazar's injuries; and (v) that the parties could reasonably have expected the two claims to be

tried together, insofar as "when Salazar was informed that State farm refused to arbitrate the [ ]

benefits claim, she knew the facts necessary for bringing bad faith claims" as well, and thus, "it

was reasonable to expect Salazar to amend her [ ] benefits claim to include any bad faith claims."

*Id.* at 281-82. Thus, the Court of Appeals affirmed the grant of summary judgment to State Farm

on issue preclusion grounds.

The second case, decided a few years after *Salazar*, is *Loveland Essential Group, LLC v.

Grommon Farms, Inc.*, 318 P.3d 6 (Colo.App. 2012). There, the Colorado Court of Appeals

considered the question of whether claim preclusion applies to "a claim allegedly arising after

the original complaint was filed, but before the court rendered judgment thereon." In *Loveland*,

the buyer of a parcel of real property brought a breach of contract suit against the seller, arguing

that although the sale contract promised the seller would convey unencumbered property, the

property was subject to an existing lease. During that litigation, the buyer discovered a second,

heretofore-unknown encumbrance also existed. The buyer requested to vacate the trial date and

an opportunity to conduct additional discovery about the second encumbrance, with an eye

toward amending its complaint to add the second encumbrance as a distinct breach of contract.

The court granted the motion and the buyer conducted additional discovery, but never actually

moved to amend its complaint to add the second claim for breach; instead, it filed a new action

asserting only a breach based on the second encumbrance. After the original case was litigated

to conclusion, and while the second case was awaiting trial, the seller moved for summary judgment in the second action, arguing that it was governed by principles of claim preclusion, as both claims for breach arose from the same transaction and sales agreement. The trial court agreed and granted summary judgment to the seller.

On appeal, the Colorado Court of Appeals reversed. It did not purport to examine the various *Foster* factors that underlie a determination of whether claims are identical or not. Instead, it purported to lay down what would appear to be a categorial rule of law. It noted that C.R.C.P. 15(d), the rule that allows a supplemental pleading to incorporate new claims arising after the commencement of the action "is expressly optional, not mandatory," and that construing the doctrine of claim preclusion to apply to claims that first arise post-filing would "render the rule's permissive language mandatory." *Id.* at 12-13. It conceded that policy justifications underlying the application of claim preclusion might shift depending on the length of time that a plaintiff knew about the new claim, but concluded that "a bright-line rule that subsequent actions on after-arising claims are not barred will engender more predictable results than a rule requiring fact-intensive inquiry." *Id.* at 13-14. Thus, the court held that "claim preclusion does not bar a later action on claims which arise after the original action is filed, but before judgment in the original action." *Id.* at 14.

It is difficult to reconcile *Loveland* and *Salazar*. Both consider whether claim preclusion bars a second suit on a claim that accrues during the pendency of a first suit and which arises from the same general set of facts as the first suit. Yet they reach fundamentally opposite outcomes: in *Salazar*, claim preclusion barred the second suit, and in *Loveland* it did not. There appears to be no meaningful way to harmonize the two outcomes. *Loveland*, the later-decided case, expressly acknowledges the contrary outcome in *Salazar* and attempts to explain it by

stating that *Salazar* "addressed only the issue of whether litigating the after-arising claims in the first trial would have conformed to the parties' expectations, not whether claim preclusion generally bars later litigation of after-acquired claims." 318 P.3d at 11 n. 4. But this is neither an especially accurate interpretation of *Salazar* nor a reading that serves to harmonize *Salazar* with *Loveland*'s categorical rule.

Since their deciding, neither *Loveland* nor *Salazar* have been relied upon by the majority in other courts of Colorado (or, for that matter, federal courts sitting in diversity) for the propositions at issue here – that is, *Salazar* for its outcome based on its particular facts, nor *Loveland* for the legal proposition that causes of action that accrue post-filing cannot be barred by claim preclusion. But this Court is somewhat persuaded by the Judge Webb's concurring opinion in *Camus v. State Farm Mut. Auto Ins. Co.*, 151 P.3d 678, 683 (Colo.App. 2006), a case decided about six months after *Salazar* (and upon which *Loveland* relies heavily). Although *Camus* was decided on its facts (there, the insureds had never asserted any claim, sounding in breach of contract or otherwise, against their auto insurer while litigating against the driver of the vehicle that struck her, and thus, there was no identity of claims between their personal injury suit against the other driver and their new bad faith claim against their insurer), Judge Webb's concurrence predicted "the dilemma faced by personal injury claimants who . . . must either seek leave to supplement their complaint under C.R.C.P. 15(d) and add bad faith claims against the insurer or risk claim preclusion should they later bring a separate bad faith case." Judge Webb noted that there was a "uniform rule among the federal Circuit Courts of Appeal that a plaintiff need not amend to avoid claim preclusion because claim preclusion is limited to claims that had accrued at the time the underlying action was commenced." *Id.* at 682. Judge Webb proceeded

to cite to at least 9 federal Circuit Court decisions, as well as the influential treatise <u>Federal</u> <u>Practice And Procedure</u> as supporting that proposition. *Id.* at 683-84.

In the absence of any other predictive indicia – and the parties here cite to none – this Court finds it most likely that the Colorado Supreme Court would follow the general weight of legal authority as recited by Judge Webb. Thus, this Court predicts that, if faced with the issue, the Colorado Supreme Court would adopt *Loveland* and conclude that claims that first accrue mid-litigation are not subject to claim preclusion as a result of the outcome of the litigation in which they arose.

2. <u>Whether Ms. Murway's bad faith claim accrued mid-litigation</u>

However, this conclusion does not dispose of the claim preclusion issue here. Allstate argues that, even if the *Loveland* rule controls, it is not applicable because Ms. Murway's alleged bad faith claim arose prior to the commencement of the first lawsuit. Although Mr. Murway pins the accrual of her bad faith claim to her January 2017 demand for policy limits and Allstate's refusal, Allstate contends that that demand and refusal were simply a reprise of the longstanding negotiations by the parties over the value of Ms. Murway's claim, and thus, any bad faith claim accrued earlier than January 2017, or indeed, the commencement of the first lawsuit in May 2016.

Consideration of Allstate's argument requires some review of the parties' prior settlement negotiations. Ms. Murway's first proposal was tendered on April 21, 2014. It explained that, immediately after the accident, Ms. Murway was taken to the emergency room and diagnosed with "sprain/strain type of injuries" and was discharged "with the standard precautionary instructions." Shortly thereafter, she went on a scheduled trip to Florida, but experienced "continuous headaches, pain, and discomfort." Upon her return, she saw a chiropractor, Dr.

Phelps, who diagnosed her with occipital neuralgia; cervical, thoracic, and lumbar strain/sprain; headache, and muscle spasm, among others.  Ms. Murway reported to Dr. Phelps that she experienced neck and back paid and headaches at a level of "6 or 7 out of 10."  Over time, Ms. Murway had some improvement in her pain symptoms, and, after a flare up of vertigo symptoms, she ultimately found some relief from those as well.  By the time of the April 2014 demand, Ms. Murway was improving in her recovery and was working "50+ hours per week" and traveling extensively, but she still suffered from neck and back pain that she would treat with over-the-counter pain relief, ice, and hot showers.  She contended that she had $33,740 in medical expenses to date and requested an additional $100,000 in compensation for "past and continuing pain and suffering, loss of enjoyment of life, and physical and emotional stress," for a total demand of $133,740.  Allstate responded to the April 2014 demand on May 23, 2014.  In pertinent part, that response states: "Based on the information you have provided to date for my review, the documented injuries and treatment rendered, the usual and customary medical bills, and the inconveniences associated with this loss, I have evaluated her case and am making an offer of $42,246 to settle her Uninsured motorist claim."  (Allstate's internal claims log indicates that Allstate valued the claim at "up to $53k," and was considering asking for a second opinion and exploring "if her vertigo [ ] is related" to the accident.)

On November 25, 2014, Ms. Murway's counsel wrote again to Allstate, explaining that, when she began working long hours, "her symptoms of pain and discomfort came roaring back." The letter explained additional treatment that Ms. Murway had sought and received, that she was diagnosed with "spasm of her muscles [ ], tendons, and ligaments", that she "has made very good progress with relaxing the muscles in her neck, shoulders, and back," that she "continues to suffer [ ] hearing loss in her right ear," and that she suffers from "continuing fear behind the

13

wheel" and attempts to limit her highway driving "because of her fear of driving since the accident." The letter reported that her unpaid medical expenses had risen to $36,976.16. It explained that Ms. Murway "thanks you for your initial offer of settlement but does not feel that it was in any way nearly adequate to compensate her for the extent of her injuries and ongoing physical and emotional trauma." The letter makes a new settlement demand of $108,976.16. On or about January 7, 2015, Allstate responded to the November 2014 letter, raising its offer to $46,464. The record does not elaborate on Allstate's reasons for that amount.

On February 24, 2015, Ms. Murway's attorney responded in writing to Allstate's offer. The letter briefly mentioned that Ms. Murway was undergoing an unspecified "injection" treatment, but otherwise simply explained that Ms. Murway continues to suffer from anxiety, inconvenience, and hearing loss. The letter then stated "It is my opinion, which is shared by Ms. Murway, that the settlement proposals that have been made are absolute[ly] inadequate to compensate her for the physical and emotional injuries she incurred as a result of the automobile collision. Based on the foregoing, I would ask that you [review the prior settlement demands] and reconsider making a more substantial offer in hopes we cam move towards resolution. At this time, I will not reduce the offer of settlement that had previously been presented." On March 18, 2015, Allstate responded to the February 2015 letter. Reciting the identical justification language from its May 2014 initial offer, Allstate stated that "our offer of $46,464 still stands."

The record does not disclose any other formal settlement demands or offers, and in May 2016, Ms. Murway commenced the first action. The particulars of the discovery proceedings that occurred in that action are not part of the record. On January 18, 2017, Ms. Murway's counsel wrote to Allstate, again making a settlement demand. That letter recited many of the same facts discussed above – the nature of the accident, Ms. Murway's initial treatment, her

ongoing anxiety about driving, and so on – and further mentioned a more recent diagnosis of dystonia that Ms. Murway had received from a Dr. Adams, and Botox injection treatments that Ms. Murway had begun receiving quarterly from Dr. Tam Sing to relieve her muscle spasms and pain. The letter referenced a report by Dr. Tam Sing that opined that Ms. Murway would require quarterly Botox injections for the remainder of her life, at an estimated cost of $9,000 per year or $180,000 for the remainder of Ms. Murway's life expectancy.

The Court pauses here to note certain matters that are recited in Dr. Tam Sing's report, which Ms. Murway has tendered as an exhibit to her summary judgment response. Dr. Tam Sing's report notes that Ms. Murway was first diagnosed with dystonia by Dr. Adams in or about April 2015, and that Dr. Tam Sing, giving a second opinion, agreed with that diagnosis in October 2015. The record reflects that Ms. Murway notified Allstate of the dystonia diagnosis in October 2015, as that diagnosis (then speculative) is recorded in Allstate's claim notes as of that time. Dr. Tam Sing's report then indicates that Ms. Murway began Botox treatments with Dr. Adams on or about November 30, 2015. It does not appear that the Botox injections are the same "injection" treatment referenced in Ms. Murway's February 2015 letter to Allstate, as the Botox injections had not yet started, but it is unclear whether Ms. Murway had reported the Botox injection treatments to Allstate prior to the January 2017 letter. Allstate's claim notes reflect that Allstate made several attempts to communicate with Ms. Murway's counsel between October 2015 and the commencement of suit in May 2016, and it may be a fair assumption that, at some point in time prior to May 2016, Ms. Murway would have advised Allstate of the expensive course of Botox injection treatments she had been incurring for the past six months.

Returning, then, to Ms. Murway's January 2017 letter, the letter concluded by explaining that Ms. Murway's "medical expenses to date [were] approximately $50,000," estimating the

cost of future Botox injections to be $180,000, and identifying Ms. Murway's entitlement to an unquantified sum to "compensate her for permanent physical impairment, pain and suffering and loss of enjoyment of life." Because the total of those sums exceeded the policy limits of $250,000, Ms. Murway thus demanded the full amount of policy limits to settle the claim. On or about March 13, 2017, Allstate responded with a formal Offer of Settlement (similar to an Offer of Judgment) of $58,000. Ms. Murway apparently rejected this offer and proceed to trial, ultimately obtaining a considerable verdict against Allstate.

Ms. Murway argues that her first indication that Allstate had engaged in the bad faith handling of her claim was in or about March 2017,[2] when Allstate responded to her demand of policy limits with an inadequate $58,000 offer. Thus, she argues, her bad faith claim accrued at that time, mid-litigation. But Allstate's response to Ms. Murway's January 2017 demand is, effectively, indistinguishable from the manner in which it had responded to Ms. Murway's settlement demands since April 2014. It appears that Allstate's settlement offers always followed a rough formula of (Ms. Murway's accrued medical expenses to date + approximately $8,000). Thus, in April 2014, when her medical expenses were approximately $34,000, Allstate responded with a $42,000 offer. In November 2014, her accrued medical expenses had risen to roughly $37,000, and Allstate responded with a settlement offer slightly above $46,000. In January 2017, when Ms. Murway reported accrued medical expenses of $50,000, Allstate's final

---

[2] Both Ms. Murway's Complaint in this action and some portion of her briefing contends that, besides Allstate's inadequate response to her January 2017 demand, Allstate also engaged in bad faith by directing her to independent medical exams but subsequently ignored the results, that it cancelled a settlement conference in the first litigation, that Allstate "did not correctly input" certain facts into its computerized records and analysis systems, and that it never followed up with her after obtaining new medical records supporting her January 2017 demand. Ms. Murway has not cited to any meaningful evidence in the record that establishes any of these facts, and thus, the Court cannot consider them as independent evidence of bad faith by Allstate.

offer was $58,000.  To the extent Ms. Murway believes that Allstate's response to her January 2017 demand was so inadequate as to constitute bad faith, it is difficult to see how, quantitatively, that offer is at all different from the course of settlement offers that Allstate had made since Ms. Murway's initial demand.

Ms. Murway expresses particular astonishment that Allstate's response to her January 2017 demand ignored the considerable, documented costs of lifetime Botox injection treatments. But this, too, is consistent with the position that Allstate has taken throughout the claims process. In each settlement demand letter, Ms. Murway notes the likelihood that she will need extensive and ongoing medical attention, potentially for life.  But, as noted above, Allstate clearly ignored any future medical costs when fashioning its settlement offers (or, at least, limited future medical costs to no more than $8,000).  Thus, any bad faith reflected by Allstate's ignoring Ms. Murway's costs of future Botox injections is identical to the bad faith Allstate would have manifested pre-litigation by ignoring her prior demands for a settlement that included costs for future chiropractic, neurologic, or other care needs.

Thus, the Court finds that Ms. Murway has not come forward with evidence that would establish that the bad faith claim she now seeks to assert against Allstate first accrued in or about January 2017, or indeed, at any time after she commenced the first lawsuit in May 2016.  Rather, the undisputed evidence reflects that Allstate's response to her claim, both before and after that lawsuit, has been predictable and essentially unchanging.  If Allstate's actions were in bad faith in January 2017, they were in bad faith in April 2014 and November 2014 as well.  Thus, the undisputed evidence establishes that Ms. Murway's bad faith claim, if any, accrued prior to the commencement of the first litigation, bringing it outside the protection against claim preclusion offered by *Loveland*.

Stripped of the protection of *Loveland*, the disposition of Ms. Murway's claim necessarily follows the otherwise factually-identical analysis of *Salazar*. For the same reasons discussed there, this Court finds that Ms. Murway's bad faith claim against Allstate satisfies the "identical claims" element of the claim preclusion analysis when compared to her breach of contract claim. Thus, the Court finds that Allstate is entitled to summary judgment on its defense of claim preclusion.

**C. Ms. Murway's motion**

Because the Court finds that Ms. Murway's bad faith claim is barred by the doctrine of claim preclusion, it need not reach her own motion for summary judgment, and that motion is denied as moot.

**<u>CONCLUSION</u>**

For the foregoing reasons, Ms. Murway's Motion for Summary Judgment **(# 50)** is **DENIED** as moot. Ms. Murway's Motion to Dismiss **(# 51)** is **GRANTED**. Allstate's Motion for Summary Judgment **(# 53)** is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Allstate on Ms. Murway's claim and shall close this case.

Dated this 27th day of January, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge